IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| OLMAN SADAT MIRALDA-LOPEZ,<br>        *Petitioner*,<br><br>    v.<br><br>TODD M. LYONS, *et al*.,<br>              *Respondents*. | 1:26-cv-317-MSN-IDD |

ORDER

OLMAN SADAT MIRALDA-LOPEZ ("Petitioner") has filed a Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE"). ECF 1.

Petitioner is currently detained at the Caroline Detention Center in Bowling Green, Virginia.. He has sued Joseph Simon, the Washington Field Office Director of ICE Enforcement and Removal Operations ("ERO"); Todd M. Lyons, ICE's Acting Director; the DHS Secretary; and Pamela Bondi, the Attorney General (collectively "Federal Respondents"). He has also sued Paul Perry, the warden of the Caroline Detention Center.

Federal Respondents have opposed the Petition on the basis that Petitioner is properly detained subject to 8 U.S.C. § 1231 to effectuate a reinstated removal order. ECF 4. Upon consideration of the Petition (ECF 1) and the parties' briefing thereto, and for the following reasons, the Court will GRANT the Petition (ECF 1) and ORDER that Petitioner be immediately released.

## I.    BACKGROUND

Petitioner is a native and citizen of Honduras. ECF 4-1 ¶ 5. In October 2016, Petitioner

was encountered by U.S. Customs and Border Protection ("CBP") agents in Arizona, who determined that Petitioner had entered the United States from Mexico without being admitted or paroled and processed him for expedited removal pursuant to 8 U.S.C. § 1225(b)(1). *Id*. ¶ 6. Petitioner was removed to Honduras on a final order of removal in December 2016. *Id*. ¶ 7; ECF 7-1.

Seven years later, on September 22, 2023, CBP agents encountered Petitioner near Del Rio, Texas. ECF 4-1 ¶ 8. At that time, the agents confirmed Petitioner's identity and immigration history and issued him a Notice of Intent/Decision to Reinstate Prior Order of removal ("Reinstated Removal Order"). ECF 4-1 ¶ 8; ECF 7-2. Petitioner was then released on an Order of Supervision. ECF 7-3.

The better part of two more years passed when, on June 4, 2025, Petitioner reported to the ICE ERO office in Richmond Virginia and was taken into civil immigration custody to, according to Federal Respondents, "effectuate the [Reinstated Removal Order] to Honduras." ECF 4-1 ¶ 9.

Federal Respondents have now produced a Notice of Revocation of Release dated June 4, 2025 which they claim was served on Petitioner prior to his being taken into custody. ECF 7; ECF 7-4. The Notice states that the revocation was made pursuant to 8 C.F.R. § 241.4 "based on a review of your file and your current immigration status" and that "[y]ou are subject to a final order of removal and efforts will continue to obtain a travel document to affect your removal from the United States." ECF 7-4. The Notice is also internally inconsistent in several ways. It was digitally signed by Washington Field Office "Assistant Field Office Director, ERO/Designated Representative" Alminis S. Hughes at 2:40 p.m. on June 4, 2025, but the proof of service portion, even while it names Petitioner, states that a deportation officer served "Gustavo Adolfo Orellana-Barrera," not Petitioner, with the Notice at 2:18 p.m. on June 4, 2025. ECF 7-4. Additionally, it

2

specifies that "[i]f you remain in ICE custody until April 16, 2025, a post order custody review will be conducted," even though the Notice had not been issued at that time and Petitioner was obviously not in detention then. *Id*.

The following day, on June 5, 2025, Petitioner claimed a fear of return to Honduras. ECF 4-1 ¶ 10. On July 7, 2025, an asylum officer found that Petitioner did not have a reasonable fear of persecution if returned to Honduras. *Id*. ¶ 11. An Immigration Judge vacated the asylum officer's determination and issued a positive reasonable fear finding on July 11, 2025. *Id*. ¶ 12. Petitioner was then placed into withholding-only immigration court proceedings. *Id*. Petitioner filed an I-589 Application for Asylum and Withholding of Removal on August 16, 2025. *Id*. ¶ 13. On November 12, 2025, the Immigration Judge denied Petitioner's Application. *Id*. ¶ 15. Petitioner timely appealed to the Board of Immigration Appeals and his appeal is currently pending. *Id*. ¶ 16.

Petitioner filed his Petition in this Court on February 3, 2026. ECF 1. Although Petitioner initially framed the permissibility of his detention as a matter of whether he was detained pursuant to 8 U.S.C. § 1225(b)(2) or § 1226(a), Federal Respondents opposed the Petition on the basis that Petitioner is actually detained pursuant to 8 U.S.C. § 1231. On March 5, 2026, the Court ordered Federal Respondents to produce all documents associated with Petitioner's 2023 release and his arrest by ICE ERO agents on June 4, 2025 and to explain all steps that they had taken to effectuate Petitioner's removal to Honduras. ECF 6. Federal Respondents in turn provided documents including Petitioner's Order of Supervision and Notice of Revocation. ECF 7. They also stated that they had not proceeded with removal efforts "because, if they did, it would violate 8 U.S.C. § 1231(b)(3)(A)" given Petitioner's withholding-only proceedings. ECF 7 ¶¶ 12, 14 ("such efforts would likely violate 8 U.S.C. § 1231(b)(3)(A)"). They also stated that "[u]pon information and belief, ICE is prepared to expeditiously remove Petitioner to Honduras if and when his appeal to

3

the BIA is denied." *Id*. ¶ 15.

## II.    DISCUSSION

Federal Respondents oppose the Petition because Petitioner has been detained to effectuate his reinstated removal order pursuant to 8 U.S.C. § 1231 and while his current eight-month detention has lasted for more than the presumptively reasonable six-month period articulated in *Zadvydas v. Davis*, 533 U.S. 678 (2001), he cannot show that his removal is not "foreseeable" given that the length of his detention is attributable to his ongoing withholding-only proceedings. ECF 4 at 1, 2 (citing *Castaneda v. Perry*, 95 F. 4th 750, 758 (4th Cir. 2024)). This argument does not hold water.

Section 1231 governs the detention and removal of aliens subject to final orders of removal, including reinstated orders of removal and provides that DHS "shall detain the alien" and physically remove him from the United States within a 90-day "removal period." *Castaneda v. Perry*, 95 F. 4th 750, 755 (4th Cir. 2024). Notwithstanding the 90-day removal period, Section 1231 also authorizes detention beyond that period in circumstances including where the alien is inadmissible or where DHS determines that they are a risk to the community or unlikely to comply with the order of removal. *Id*. But even while Section 1231 does not specify a time limit on post-removal period detention, due to the serious constitutional concerns that would arise if it were construed as authorizing indefinite detention, the Supreme Court has understood the statute to permit post-removal period detention for a presumptively reasonable period of six months. *Id*. at 756 (citing *Zadvydas*, 533 U.S. at 688, 689, 701). After that six month period, "'if the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing,' or release the alien." *Id*.; *see also Dong Lu v. Noem, et al.*, ECF 8 at 4, No. 1:26-cv-390-MSN-

IDD (E.D. Va. Mar. 2, 2026) (slip op.) ("a noncitizen's detention pursuant to § 1231 is presumptively unlawful and violates due process if his detention extends for more than six months and the petitioner 'provides good reason . . .'").

Importantly, the fact that Petitioner is subject to ongoing withholding-only removal proceedings standing alone does not carry Petitioner's initial burden to show that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Castaneda*, 95 F. 4th at 756. That is because "withholding-only proceedings are *finite*." *Id*. at 757.

But here, there is more than just the fact that Petitioner's withholding-only proceedings have been prolonged. Critically, Petitioner remained free in the United States on supervision for two years after his reentry in 2023 and there is no explanation for what, if any, removal efforts were made in those years. Thus, as Judge Brinkema recently observed in *Gatshetshiladze v. Lyons, et al*, "it can be inferred that ICE attempted—but failed—to remove [Petitioner]" in that time period. ECF 11 at 8, No. 1:25-cv-2405-LMB-IDD (E.D. Va. Mar. 4, 2026) (slip op.). Indeed, this is the only reasonable conclusion that can be drawn because Petitioner never sought relief from removal from 2023 to 2025 and "absent any other diplomatic or logistical barriers, [] the government can—and—must promptly carry out the alien's removal to the designated country." *Castaneda*, 95 F. 4th at 757. This casts severe doubt on Petitioner's return to Honduras regardless of the outcome of his withholding-only proceedings. Thus, Petitioner has established "good reason" to believe there is no significant likelihood of removal in the reasonably foreseeable future, and to that, Federal Respondents have offered nothing to rebut his showing.

Moreover, the procedure by which Federal Respondents revoked Petitioner's Order of Supervision violates the applicable INA regulations, 8 C.F.R. § 241.4, rendering that action

ineffective and violative of procedural due process independently and under the *Accardi* doctrine.

Section 241.4(l)(2) specifies that DHS may revoke the release of a noncitizen if an official determines that (i) the purposes of release have been served; (ii) the alien violated any condition of release; (iii) it is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) the conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate. The decision to revoke may be made by the Executive Associate Commissioner or a district director "when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id*.

First, "the essential requirements of procedural due process include adequate notice and an opportunity to be heard at a meaningful time and in a meaningful manner," *Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224, 226 (D. Mass. 2025) (cleaned up) (cited by *Gatshetshiladze*, slip op. at 9). Under the regulation, "in order to revoke conditional release, the Government must provide adequate notice and give the noncitizen an opportunity to respond to the reasons offered for the revocation." *Id*. Petitioner's Notice of Revocation fails to meet this requirement in multiple ways. The Notice offers no meaningful reason for revocation to which Petitioner can respond. ECF 7-4 ("This decision has been made based on a review of your file and your current immigration status"). And based on the proof of service provision stating that service was made on some person other than Petitioner, it is further doubtful that Petitioner ever received the Notice prior to the initiation of this habeas action at all.[1]

---

[1] This is to say nothing of the fact that the Notice of Revocation was signed by Hughes after it was served, which is consistent with Federal Respondents' habit of issuing such Notices retrospectively and only after detaining a noncitizen. *See, e.g.*, *Gatshetshiladze*, slip op. at 10; *Serpas v. Simon*, No. 1:25-cv-2369, slip op. at 10 (E.D. Va. Feb. 3, 2026).

Second, the Notice of Revocation was signed not by an Executive Associate Commissioner, but by Assistant Field Office Director Alinis Hughes. ECF 7-4. Assuming that an Assistant Field Office Director qualifies as a "district director" as specified in the regulation, there is still "no indication that [Hughes] determined that revocation was in the public interest or that circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Dong Lu*, slip op. at 9. "The requirement that a senior official make the determination to revoke release—that is, to restrict a person's liberty—is not merely a housekeeping requirement but instead part of a procedural framework, designed to insure the fair processing of an action affecting an individual, a violation of which can be deemed to be prejudicial and thus to implicate due process." *Id*. (citing *Serpas*, slip op. at 10-11).

### III.    CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the Petition (ECF 1) is GRANTED; and it is further

ORDERED that no later than 4:00 p.m. on March 12, 2026, Federal Respondents RELEASE Petitioner from detention with all of his personal property; and it is further

ORDERED that Petitioner's 2023 Order of Supervision is RESTORED immediately and may not be revoked unless done so in compliance with the requirements of 8 C.F.R. § 241.4; and it is further

ORDERED that the Federal Respondents, along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—are ENJOINED from rearresting Petitioner except upon a concrete showing of imminent removal, or if he violates any condition of supervision; and it is further

ORDERED that Federal Respondents file a status report with this Court within three (3)

7

days stating whether Petitioner has been released and if not, why not.

**IT IS SO ORDERED.**

The Clerk is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of

Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

_____/s/_____

Michael S. Nachmanoff
United States District Judge

March 11, 2026
Alexandria, Virginia

8